IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-01709-REB-KLM

MICHAEL A. COLLINS, an individual,

      Plaintiff,

v.

ACE MORTGAGE FUNDING, LLC, and its employees, agents and affiliates, individually,
COUNTRYWIDE HOME LOANS, INC., a/k/a COUNTRYWIDE HOME LOANS
SERVICING, LP, and its employees, agents and affiliates, individually,

      Defendant(s).

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on (1) **Defendant Countrywide Home Loans, Inc.'s Amended Motion to Dismiss or for Summary Judgment** [Docket No. 19; Filed September 8, 2009] ("Defendant's First Motion"); (2) **Defendant Countrywide Home Loans, Inc.'s Motion to Dismiss or for Summary Judgment** [Docket No. 52; Filed December 5, 2008] ("Defendant's Second Motion"); and (3) **Plaintiff's Amended Motion for Summary Judgment and for Judgment on the Pleadings Against Countrywide Home Loans, Inc., a/k/a Countrywide Home Loans Servicing, LP, and Its Employees, Agents and Affiliates, Individually Only** [Docket No. 84; Filed February 10, 2009] ("Plaintiff's Motion").  The Motions have been fully briefed and are ripe for resolution. Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1(C)(3), the Motions have been referred to this Court for recommendation.  The Court has reviewed the parties' pleadings, the entire case file, and the applicable case law and is sufficiently advised in the

premises.

For the reasons set forth below, the Court RECOMMENDS that **Defendant's Second Motion** [#52] be **GRANTED**, **Defendant's First Motion** [#19] **be DENIED as moot**, and **Plaintiff's Motion** [#84] be **DENIED**.

## I.  Statement of the Case

### A.      Factual Background

Plaintiff, who is proceeding *pro se*, filed this case in state court on June 16, 2008 [Docket No. 1-3].  On August 12, 2008,  Defendant Countrywide removed the case to this Court on the basis of diversity jurisdiction [Docket No. 1].  Plaintiff's operative complaint asserts nine claims for relief against Defendants:  (1) negligence; (2) breach of contract; (3) breach of implied/express warranties; (4) fraud and fraudulent misrepresentation; (5) violation of Colo. Rev. Stat. § 38-40-105 (unconscionable acts and practices in certain mortgage loan transactions); (6) violation of Colo. Rev. Stat. § 6-1-105 (deceptive trade practices); (7) violation of Colo. Rev. Stat. § 12-61-911 (mortgage broker fraud, misrepresentation, conflict of interest – Defendant Ace Mortgage Funding only); (8) breach of fiduciary duty; and (9) breach of contract (Defendant Countrywide only).  *Amended Complaint* [#48] at 2-15.

Plaintiff's claims arise from several loans he secured from Defendant Countrywide in January 2005 to purchase a personal residence located at 25107 East Park Crescent Drive, Aurora, Colorado ("Park Crescent Loans") and to purchase an investment property located at 17347 East Asbury Circle, Aurora, Colorado ("Asbury Circle Loans").  *Id.* at 2-3. In the process of securing the Asbury Circle Loans from Defendant Countrywide, which

2

were brokered by Defendant Ace Mortgage Funding, Plaintiff contends that a representative from Defendant Ace Mortgage Funding "told [him he] would qualify for [a fifth] loan and in thirty days [he] could refinance the loan with Countrywide for an additional $30,000 to be used to repair the [Asbury Circle] property." *Id.* at 2. Plaintiff alleges that he "told [the representative he] did not have the money to repair the house and could not purchase the house unless it could be refinanced within thirty days so [he] would have money to repair it." *Id.* According to Plaintiff, the representative of Defendant Ace Mortgage Funding promised that Defendant Countrywide had already approved the fifth loan. *Id.*

After the Asbury Circle Loans closed and within thirty days, Plaintiff contacted the representative of Defendant Ace Mortgage Funding who informed him that Defendant Countrywide had denied the fifth loan due to issues with Plaintiff's credit report. *Id.* Plaintiff claims that the issues with his credit report were previously known to Defendants when he secured his initial loans. *Id.* Nevertheless, Plaintiff was not approved for a fifth loan and Plaintiff ultimately secured the loan from a different lender, but for an amount less than Plaintiff needed to make the repairs on the Asbury Circle property. *Id.* Plaintiff claims that he had a buyer for the property and the promise of a $75,000 return on his investment. However, because he could not finish the repairs, he was not able to sell the house. *Id.* Consequently, he was not able to afford the Asbury Circle Loans payments and the Asbury Circle property was foreclosed. *Id.* The foreclosure sale occurred on April 27, 2006 [Docket No. 12-5].[1]

---

[1] Although the order authorizing foreclosure of the Asbury Circle property was not attached to Plaintiff's amended complaint, I may "take judicial notice of publicly-filed records in

3

After Plaintiff secured the Park Crescent Loans, and given his inability to turn a profit on the Asbury Circle property, he sought to refinance the Park Crescent Loans to enable him to perform repairs on the Park Crescent property. *Amended Complaint* [#48] at 12. Specifically, "Plaintiff tried to refinance the loan with [Defendant Countrywide] in October of 2005, approximately 9 months after plaintiff purchased the house. Because of financing problems encountered with the property on Asbury and Countrywide's denial to refinance Park Crescent, plaintiff was unable to make the payments," and Defendant Countrywide began foreclosure procedures on the Park Crescent property. *Id.* Prior to foreclosure, "plaintiff came to an agreement to cure the loan" and in May 2006 began making payments pursuant to a Repayment Plan Agreement (hereinafter "new payment schedule"). *Id.* However, Plaintiff failed to make his payments by the prescribed dates. *Id.* at 13. He claims that he contacted Defendant Countrywide on multiple occasions to explain his inability to comply with the new payment schedule and when he did not receive a return call, he assumed that his delayed payments would be accepted. *Id.*

Shortly after entering into the new payment schedule with Defendant Countrywide, Plaintiff moved to California and was not regularly checking his mail sent to the Park Crescent property. *Id.* In August 2006, Plaintiff eventually reviewed his mail and noticed that Defendant Countrywide had refused to accept the June and July 2006 payments because they were late. *Id.* According to Plaintiff, he attempted to contact Defendant Countrywide, but it did not return any of his calls at this time "and there were no options left to him to redeem his house." *Id.* When he did eventually speak to an agent of Defendant

---

our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

Countrywide, she was not helpful, except to tell Plaintiff that another agent had tried to call him on three occasions. *See id.* Plaintiff claims to have no record of these calls. *Id.* Sometime after Plaintiff talked to the agent of Defendant Countrywide in August 2006, and following his return from California, Plaintiff read a letter from Defendant Countrywide dated June 24, 2006 which indicated that Defendant Countrywide had cancelled the new payment schedule and that a foreclosure sale was scheduled for July 12, 2006. *Id.* at 13-14. Plaintiff claims that the agent he spoke to could have shared this information with him when he spoke to her in August 2006, or when he left previous messages, but did not. *Id.* at 14. However, Plaintiff also admits that his payments under the payment plan were late, he never received formal approval to submit late payments, he moved to California shortly after agreeing to the new payment schedule and was not regularly checking his mail, and when he spoke to the agent in August 2006, the foreclosure sale had already occurred. *See id.* at 13-14.

Regardless, Plaintiff contends that

> Countrywide and [its agent] are the direct cause for the foreclosure and sale of [the Park Crescent property] . . . and the direct cause of the destruction of plaintiff's credit. Countrywide and [its agent] did not return plaintiff [sic] calls to inform him of any changes in the agreement after plaintiff made repeated phone calls to Countrywide and [its agent]. Countrywide and [its agent] are at fault for the foreclosure in not returning plaintiff [sic] calls in order for him to cure the default.

> The agreement states "if, for some reason, you cannot comply with this Agreement, please notify us immediately so that we can discuss whatever options may be available to you." Plaintiff tried several times to contact [Defendant Countrywide's agent] to no avail. The agreement also states that foreclosure is not an action Countrywide desires to take, but Countrywide foreclosed the loan without discussing any options that were available to him, therefore, breaching the contract and causing Plaintiff severe credit damage, emotional and mental distress, and foreseeable and unforeseeable economic damages.

5

*Id.* at 14.[2]

## B.    Procedural Background

Defendant Countrywide filed its First Motion on September 8, 2009.  Thereafter, Plaintiff was given leave to amend his complaint, essentially making Defendant's First Motion moot.  *See Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006).[3] In response to Plaintiff's Amended Complaint, which is the operative complaint for my purposes, Defendant filed its Second Motion.  This is the operative Motion for the Court's resolution of Defendant's arguments.  To the extent that Defendant's Second Motion refers to arguments advanced in Defendant's First Motion, the Court will consider them in relation to adjudication of Defendant's Second Motion.

Defendant's Second Motion advances three main arguments:  (1) Plaintiff's first eight claims are barred by Colorado's Credit Agreement Statute of Frauds; (2) To the extent that

---

[2] The Court notes that the parties quote and refer extensively to the new payment schedule agreement entered into by Defendant Countrywide and Plaintiff after the initial foreclosure proceedings on the Park Crescent property were suspended.  The parties indicate that the new payment schedule was attached to Plaintiff's original complaint filed in state court, however, when the case was removed, the exhibits were not attached to the complaint. Although the Amended Complaint refers to exhibits, including the new payment schedule, no exhibits are attached.  As such, the Court ordered Defendant Countrywide to supplement the record and provide the exhibits [Docket No. 102].  I may consider the exhibits to the extent that they are referenced in the Amended Complaint and are central to Plaintiff's claims.  *Alvarado*, 493 F.3d at 1215.  To the extent that I determine any portion of the pending motions pursuant to the standard for granting summary judgment, I may consider all materials submitted on the record, including the new payment schedule which is now located at Docket No. 103-6.

[3] Defendant Ace Mortgage Funding also filed a Motion to Dismiss Plaintiff's original complaint [Docket No. 12], but the case against this party has since been stayed pursuant to 11 U.S.C. § 362 pending its petition for bankruptcy [Docket No. 44].  Given the stay, the Court does not address Defendant Ace Mortgage Funding's Motion to Dismiss, except to note that it is likely moot as it was filed in relation to a pleading which has been superceded by the Amended Complaint.

Claims III, V, VI, VII and VIII are not barred, these claims should be dismissed because the statutory provisions upon which they are based are not applicable to the transactions at issue here; and (3) Claim IX should be dismissed because there are no material facts in dispute that would entitle Plaintiff to relief. *Defendant's Second Motion* [#52] at 8-13.  The majority of these arguments can be resolved pursuant to the standard in place for motions to dismiss.  However, where appropriate, the Court will consider whether Defendant's Second Motion should be considered as a motion for summary judgment by review of pleadings and evidence outside the Amended Complaint.

By contrast, Plaintiff's Motion advances arguments that he is entitled to summary judgment or judgment on the pleadings regarding each of his claims including negligence, breach of contract, breach of implied or express warranties, fraud, violation of Colorado statutory provisions, and breach of fiduciary duty. *Plaintiff's Motion* [#84-3] at 3-17.  As a preliminary matter, the Court notes that Plaintiff's Motion neglects to address whether Plaintiff is entitled to relief pursuant to Claim VII (this may be due to the fact that the claim is asserted against Defendant Ace Mortgage Funding only).  Further, the Court notes that pursuant to Claim IX (breach of contract), Plaintiff seeks relief for civil theft; however, no claim for civil theft is contained in Plaintiff's Claim IX, or any other claim, in Plaintiff's operative complaint. *Compare id.* at 15-17, *with Amended Complaint* [#48] at 2-15.

## II.  Standards of Review

### A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all the well-pled allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, ___, 127

S. Ct. 2197, 2200 (2007).  Courts should look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief.  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).  That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007).  The complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.  *Lane v. Simon*, 495 F.3d 1182 (10th Cir. 2007).  As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174 (10th Cir. 2007).  Additionally, a court evaluating a complaint tested by a motion to dismiss may only consider the complaint and any documents attached to it as exhibits.  *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991); *see also Erickson*, 127 S. Ct. at 2200 (evaluating sufficiency of complaint by reference only to the allegations of the complaint).  Here, Defendant Countrywide asserts that none of Plaintiff's nine claims adequately state a claim upon which relief may be granted.

### B.    Motion for Summary Judgment Pursuant to Fed.  R.  Civ.  P.  56

In the alternative, Defendant Countrywide argues that it is entitled to summary judgment on any of Plaintiff's claims which cannot be resolved on the face of Plaintiff's operative complaint.  The purpose of a summary judgment motion is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and

8

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the opposing party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit pursuant to the governing substantive law. *Id.*

The movant must show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). In the context of Defendant's Second Motion, when the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. After the movant has met its initial burden, the burden shifts to the opposing party to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The opposing party must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

In the context of Plaintiff's Motion, when the movant bears the ultimate burden of persuasion at trial, the movant must show the absence of a genuine issue of material fact by demonstrating each "element of its claim or defense by sufficient, competent evidence to set forth a *prima facie* case." *In re Ribozyme Pharm., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).  After the movant has met its initial burden, the burden shifts to the opposing party to either "produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery." *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *In re Ribozyme*, 209 F. Supp. 2d at 1111; Fed. R. Civ. P. 56(e)-(f).

### C.    Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)

As an alternative to his request for summary judgment, Plaintiff also seeks judgment on the pleadings.  In this regard, the Court accepts as true the well-pled factual allegations of the opposing party and draws all reasonable inferences in its favor.  *Qwest Comm'ns. Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002).  "Uncontested allegations to which the other party had an opportunity to respond are taken as true."  *Id.*

"Judgment on the pleadings should not be granted 'unless the moving party clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (citation omitted); *Qwest*, 208 F.R.D. at 291 (holding that judgment on the pleadings is not appropriate where the answer raises issues of fact or affirmative defenses "which, if proved, would defeat plaintiff's recovery").  The Court may consider the complaint, any material that is attached to the complaint, and the answer in its review of a motion for judgment on the pleadings.  *Park Univ.*, 442 F.3d at 1244; *Qwest*, 208 F.R.D.

at 291.

Finally, the Court must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall*, 935 F.2d at 1110.  For example, the Court may treat a *pro se* litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury.  *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)).  However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *See Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Defendant's Second Motion

### A.      Statute of Frauds – Claims I, II, III, IV, V, VI and VIII

In relation to Claims I, II, III, IV, V, VI, and VIII ("State Law Claims"), Defendant Countrywide contends that these claims are subject to dismissal because they are barred by Colorado's Credit Agreement Statute of Frauds, Colo. Rev. Stat. § 38-10-124(2). *Defendant's Second Motion* [#52] at 8-9.[4]  The factual basis for the State Law Claims is the alleged oral promise made to Plaintiff by a representative of Defendant Ace Mortgage Funding that Defendant Countrywide had agreed to extend a fifth loan to Plaintiff for the

---

[4] Although Defendant Countrywide seeks dismissal of Claim VII, this claim is limited to Defendant Ace Mortgage Funding and will not be addressed further herein.  *See Amended Complaint* [#48] at 9-10.

11

Asbury Circle property.   Specifically, the Amended Complaint describes the alleged agreement as set forth below:

> I had several conversations with Patrick Chavoustie, a loan officer for Ace Mortgage, regarding a loan for the purchase of the property on Asbury Circle.  Patrick told me I would qualify for the loan and in thirty days I could refinance the loan with Countrywide for an additional $30,000 to be used for the repair of the property.  I told Patrick I did not have the money to repair the house and could not purchase the house unless it could be refinanced within thirty days so I would have the money to repair it.  Patrick understood and promised me the loan was already approved and I simply had to wait thirty days for the loan.  My realtor, Gary Yost, called Patrick and confirmed Patrick's promise that in thirty days I would get a new loan [from Countrywide] for an additional $30,000 to repair the property.

*Amended Complaint* [#48] at 2.

In his Response, Plaintiff concedes that "[t]he Statute of Frauds . . . does bar plaintiff's claims based on any oral agreements not reduced to righting [sic] between plaintiff and Countrywide."  *Response* [#59] at 4.  However, he contends that the alleged promise should be construed as an agreement between Defendants Ace Mortgage Funding and Countrywide to the benefit of Plaintiff as a third-party beneficiary.  *Id.*  In its Reply, Defendant Countrywide contends that Plaintiff's argument is "mere semantic gamesmanship that contradicts the allegations of the Amended Complaint, which describes a credit agreement and is silent as to any purported third-party agreement.  Additionally, no matter how Plaintiff characterizes his claims, the statute has been interpreted broadly to bar all claims which merely relate to a credit agreement, including those brought by third-party beneficiaries."  *Reply* [#73] at 4.  The Court considers the parties' arguments in turn.

"[T]he Colorado statute of frauds provides [that] no debtor or creditor may maintain an action relating to a credit agreement involving a principal amount in excess of $25,000, unless the credit agreement is in writing and signed by the party against whom enforcement

12

is sought." *CoBank, ACB v. Reorganized Farmers Coop. Ass'n*, 170 Fed. Appx. 559, 564 (10th Cir. 2006) (unpublished decision) (citing Colo. Rev. Stat. § 38-10-124(2)). Defendant Countrywide contends that the legislative history of the statute of frauds confirms that to the extent an oral credit agreement is reached, "borrowers and lenders alike must be sure to 'put it in writing,' to ensure the enforceability of any claims they may have [related to the alleged credit agreement] in the future." *Hewitt v. Pitkin County Bank & Trust Co.*, 931 P.2d 456, 459 (Colo. Ct. App. 1995). Here, Plaintiff concedes in his Amended Complaint that the alleged  oral promise, was for a sum in excess of $25,000, that the promise was not in writing and, therefore, Defendant Countrywide (the alleged creditor) did not sign any agreement to extend credit to Plaintiff (the alleged debtor) in this regard. *See Amended Complaint* [#48] at 2; *Response* [#59] at 4.

Defendant Countrywide contends that Plaintiff's State Law Claims, which are based upon an alleged oral credit agreement and Plaintiff's reliance thereon, are not actionable. *Defendant's Second Motion* [#52] at 8-9; *Reply* [#73] at 3-5.

> The plain language of the statute renders representations, warranties, or omissions in connection with credit agreements inoperative unless they are reduced in writing.  Thus, as a matter of law, reliance upon such representations made in connection with negotiations for credit agreements or their waiver, modification, or extension can neither be reasonable nor justifiable.

*Norwest Bank Lakewood, Nat'l Ass'n v. GCC Partnership*, 886 P.2d 299, 302 (Colo. Ct. App. 1994).

"As the plain language of the statute indicates, section 38-10-124 does not only apply to claims involving transactions which are characterized exclusively as credit agreements, but also applies to claims which merely relate to credit agreements involving

a principal amount exceeding $25,000. [The statute] specifically provides that credit agreements may not be implied under any circumstances . . . ." *Univex Int'l, Inc. v. Orix Credit Alliance, Inc.*, 914 P.2d 1355, 1358 (Colo. 1996). The application of the statute of frauds is not limited to contractual claims, but also bars any related tort claims which rely on the alleged oral credit agreement as a basis for the injury. *See, e.g., Lang v. Bank of Durango*, 78 P.3d 1121, 1123-24 (Colo. Ct. App. 2003) (holding that statute barred claims for fraud and unjust enrichment); *Hewitt*, 931 P.2d at 459 (holding that statute barred claims for breach of fiduciary duty, negligent misrepresentation and outrageous conduct); *Norwest Bank*, 886 P.2d at 302 (holding that statute barred all tort claims).

The application of the statute of frauds is purposefully broad to "discourage lender liability litigation," and "abrogate judicially developed exceptions to the statute of frauds . . . which could otherwise provide a basis for enforcing an oral loan agreement." *Schoen v. Morris*, 15 P.3d 1094, 1098-99 (Colo. 2000) (citation omitted). To this end, the statute of frauds also precludes assertion of statutory claims where the alleged injury occurred only as a result of the alleged oral credit agreement. *See* Colo. Rev. Stat. § 38-10-124(2) ("Notwithstanding any statutory or case law to the contrary . . . no debtor or creditor may file or maintain an action or claim relating to a[n] [oral] credit agreement . . . ."); *see also Univex*, 902 P.2d at 880 (holding that statute applies to any agreement to extend credit, regardless of the context in which the agreement was formed, and bars *any action or claim* relating to a credit agreement, regardless of whether the action is based upon a breach of contract *or some other theory of recovery*" (emphasis added)). For instance, the statute of frauds has been found to bar promissory estoppel claims brought pursuant to Colo. Rev. Stat. § 4-1-103, see *Univex*, 902 P.2d at 1357-58, and warranty claims brought pursuant

14

to Colo. Rev. Stat. § 4-2-313, *Cooley v. Big Horn Harvestore Sys., Inc.*, 767 P.2d 740, 744 (Colo. Ct. App. 1988), *rev'd on other grounds by* 813 P.2d 736 (Colo. 1991).

Plaintiff argues that the Court should construe the allegations contained in his Amended Complaint as suggesting that he was a third-party beneficiary to an agreement between Defendants. *Response* [#59] at 4-5. Putting aside whether the clear language of the Amended Complaint supports Plaintiff's assertion,[5] the Court notes that "[t]he plain language of the statute applies to effectuate a bar to any action or claim *relating to* a credit agreement and expressly precludes exceptions by implication or construction." *Norwest Bank*, 886 P.2d at 302 (emphasis in original). Further, I note that Plaintiff's argument that the statute of frauds does not apply to alleged oral credit agreements entered into for the benefit of a third-party debtor is not supported by the law in this area. The applicable precedent clearly holds that the statute of frauds is not limited to claims between parties where there is a direct debtor-creditor relationship. *See, e.g.*, *Schoen*, 15 P.3d at 1099-1100 (holding that the statute barred third party's claims relating to oral representations made between lenders). "Providing rights to third [parties] greater than those afforded to [others] would contravene the plain language of the statute and the legislature's intent in enacting the statute." *Id.* at 1100.

Given the clear application of the statute of frauds to allegations which form the basis for Plaintiff's claims I, II, III, IV, V, VI and VIII, and Plaintiff's admission that the

---

[5] I note that Plaintiff's argument that the oral agreement was between Defendants Ace Mortgage Funding and Countrywide, not between Plaintiff and Defendant Countrywide, is in direct contradiction to Plaintiff's breach of contract claim (Claim II) whereby he contends that Defendant Countrywide breached its contract with Plaintiff. *See Amended Complaint* [#48] at 3-4.

alleged credit agreement was not in writing, was not signed by Defendant Countrywide and was for a sum over $25,000, I find that Plaintiff has failed to state claims upon which relief may be granted. Stated another way, the allegations contained in the Amended Complaint do not plausibly support a legal claim for which Plaintiff may be entitled to relief. Accordingly, I RECOMMEND that Defendant's Second Motion be **GRANTED** with respect to these claims.[6]

### B.    Breach of Contract – Claim IX

Plaintiff's final claim asserted against Defendant Countrywide relates to the foreclosure of the Park Crescent property. Specifically, Plaintiff claims that Defendant Countrywide breached the terms of the new payment schedule which the parties entered into after initial foreclosure proceedings began on the Park Crescent property. *Amended Complaint* [#48] at 12-15. In exchange for the agreement, and Plaintiff's compliance with the new payment schedule, the foreclosure was suspended. However, the new payment schedule, which is the contract at issue in this claim, contains a provision which authorizes Defendant Countrywide to restart foreclosure without notice if the terms of the agreement are not met. The new payment schedule also contains a provision which provides the debtor with the option to contact Defendant Countrywide if he is having trouble meeting its terms. Although the provision does not also state that Defendant Countrywide has an obligation to work with the debtor to excuse any delays or problems he has in satisfying the terms of the contract, Plaintiff contends that "Defendant Countrywide breached [this term

---

[6] Because I recommend dismissal on the basis of the statute of frauds, it is not necessary to consider Defendant Countrywide's alternate arguments for dismissal of these claims.

of the] agreement with plaintiff by not answering and/or returning his phone calls . . . ."
*Response* [#59] at 7-8.

Essentially, this claim requires the Court to interpret the contract between the parties
and determine if Defendant Countrywide's conduct breached that contract.  Because the
interpretation of the contract is a legal determination, I review this portion of Defendant's
Second Motion pursuant to the standards set forth for summary judgment.  *See In re
Aramark Leisure Servs.*, 523 F.3d 1169, 1176 (10th Cir. 2008); *Am. Family Mut. Ins. Co.
v. Allen*, 102 P.3d 333, 340 (Colo. 2004).  The parties' positions, and the interplay of the
contractual terms cited by each, is discussed in more detail below.

Defendant Countrywide contends that "Plaintiff's ninth claim for relief alleging breach
of contract relating to the 2006 foreclosure sale should be dismissed because Countrywide
took no action which the contract did not clearly, specifically and explicitly provide it could
take."  *Reply* [#73] at 3.  To this end, Defendant Countrywide cites to the provision of the
contract under the heading "Collection and Foreclosure Actions/Bankruptcy" which states:

> If foreclosure action relating to your Loan has commenced, it will not be
> cancelled, but it will be postponed by Countrywide provided there is no
> default by you under this Agreement.  If you fail to comply with each and all
> of the terms and conditions of this Agreement, this Agreement, at
> Countrywide's option, shall terminate immediately and automatically without
> further notice to you and, except as otherwise provided herein, shall be of no
> further force and effect.  In such case, all amounts that are owing under the
> Loan shall become immediately due and payable, and Countrywide shall
> commence or continue, as the case may be, foreclosure proceedings, or take
> such other action as is permitted by law.

*New Payment Schedule* [#103-8] at 1.

Plaintiff does not contest the meaning of this provision in his Response, or that his
payments pursuant to the new payment schedule were untimely; rather, he cites to a

separate provision of the contract under the heading "Miscellaneous Provisions" which

states:

> If, for some reason, you cannot comply with this Agreement, please notify us immediately so that we can discuss whatever options may be available to you.

*Id.* at 2.  The Court notes that immediately preceding this sentence in the same provision

is the following language:

> Again, if you fail to meet any of the terms or conditions of this Agreement, this Agreement, at Countrywide's option, shall terminate automatically without further notice to you and, in such case, all amounts owing will be immediately due and payable, and Countrywide shall commence or continue, as the case may be, foreclosure proceedings or take such other action as it permitted by law.  Certainly, these are not actions Countrywide desires to take.  Accordingly, Countrywide urges you to strictly abide by all the terms and conditions of this Agreement.

*Id.*

In its Reply, Defendant Countrywide asks the Court to reject Plaintiff's contention

that Defendant Countrywide's alleged failure to return his calls should be viewed as a

breach of contract under any provision "because such a reading would render meaningless

those provisions of the agreement in which Plaintiff agreed that Countrywide could cancel

the agreement without notice and proceed to foreclosure upon default.  Further, even if the

language could be interpreted to require Countrywide to discuss options or give some other

notice to Plaintiff prior to terminating the agreement, Plaintiff admits to receiving the June

24, 2006 letter in which Countrywide informed him it would exercise its option to terminate

the agreement . . ." and giving him a final chance to cure.  *Reply* [#73] at 7.  Because

Plaintiff, by his own admission, was not regularly checking his mail at the Park Crescent

property, Plaintiff claims he did not receive this letter until after the foreclosure sale had

already occurred.  *See Amended Complaint* [#48] at 13; *Response* [#59] at 7.

It is undisputed that Plaintiff was unable to timely satisfy the terms of the new payment schedule.  In addition, it is undisputed that the Plaintiff did not speak with his account representative at Defendant Countrywide until after the foreclosure sale had already occurred.  Finally, it is undisputed that Defendant Countrywide sent Plaintiff a letter in advance of foreclosure.[7]  The disputed facts relate to:  (1) Plaintiff's contention that he left several unanswered messages with Defendant Countrywide and (2) Defendant Countrywide's contention that it called Plaintiff three times prior to foreclosure.  The determination of whether these factual disputes are material is based upon the law governing interpretation of the contract.

Because the Court's jurisdiction is premised on diversity, the laws of the forum state govern my analysis of the contract at issue here.  *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).  Pursuant to Colorado law, the Court's role in interpreting a contract is to give effect to all provisions, such that none are deemed to be meaningless if possible.  *Roberts v. Adams*, 47 P.3d 690, 694 (Colo. Ct. App. 2001); *Holland v. Bd. of County Comm'rs*, 883 P.2d 500, 505 (Colo. Ct. App. 1994).  This is accomplished by examining the contract in its entirety.  *Bevsek v. Huerfano School Dist. RE-1*, 728 P.2d 325, 326 (Colo. Ct. App. 1986); *Roberts*, 47 P.3d at 694 (holding that "[a]n integrated contract in the first instance is to be interpreted in its entirety to harmonize all its provisions").  Further, the

---

[7] To be clear, although Plaintiff claims that he did not receive the June 24, 2006 letter until sometime after the foreclosure sale had already occurred, he does not contend that the timing of his receipt was somehow the fault of Defendant Countrywide.  Rather, the facts appear to be that because Plaintiff had moved to California and was not regularly checking his mail, he did not receive the letter in a timely manner.

Court gives effect to the intent and reasonable expectations of the parties to enforce the plain language of the contract, assuming the terms are not ambiguous. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). The mere fact that the parties disagree about the meaning or application of a provision in the context of other provisions does not make the contract ambiguous. *Snipes v. Am. Mut. Ins. Co.*, 134 P.3d 556, 558 (Colo. Ct. App. 2006).

Here, a specific provision of the contract gives Defendant Countrywide the right to foreclose upon the property of Plaintiff without notice if he fails to comply with the terms of the new payment schedule. *See New Payment Schedule* [#103-8] at 1. That term is later restated in a miscellaneous provision. *Id.* at 2. The new payment schedule set dates for Plaintiff's monthly payments. *Id.* at 4. The first date was June 20, 2006. Plaintiff admits that he did not timely remit his payment in June and did not formally obtain permission to submit a late payment from Defendant Countrywide. However, Plaintiff contends that he contacted Defendant Countrywide soon after the new payment schedule was agreed upon to explain that he "would not be paid until July 6th and [he] would send the June 20th payment on July 7th or 8th." *Amended Complaint* [#48] at 13. The person responsible for Plaintiff's account did not return Plaintiff's phone calls and "Plaintiff thought the arrangement was accepted." *Id.* On this basis, Plaintiff contends that the foreclosure of the property violated the provision of the contract allowing Plaintiff to contact Defendant Countrywide if he could not comply with the terms of the agreement.

Defendant Countrywide argues that Plaintiff's interpretation of this provision, and the importance he attributes to it over a more specific provision which provides Defendant Countrywide with the right to foreclose upon the property without further notice, should be

20

rejected.  I agree.  "[I]t is a basic principle of contract law that specific clauses of a contract control the effect of general clauses."  *See Frontrange Solutions USA, Inc. v. Newroad Software*, 505 F. Supp. 2d 821, 831 (D. Colo. 2007) (quoting *Holland*, 883 P.2d at 505). To the extent that Plaintiff is suggesting that the Court should permit a general or miscellaneous provision to eviscerate other specific, bargained-for terms of the contract, this argument is unpersuasive.  Further, where a party takes an action which is provided for by the express provisions of the contract, a breach of contract claim cannot stand.  *See generally Holland*, 883 P.2d at 505.

Moreover, the provision upon which Plaintiff relies contains no promise by Defendant Countrywide aside from a discussion of options.  Even assuming, arguendo, that Defendant Countrywide breached that promise, its failure to have a discussion with Plaintiff regarding his "options" led to no discernable result.  In other words, whatever might have resulted from such discussions is purely speculative.  Given that the contract provided Defendant Countrywide the unconditional right to foreclose if the terms were not met and that Plaintiff admittedly could not provide a timely payment in June, Defendant could have reasonably taken the position that Plaintiff had no "options" other than foreclosure.  Regardless, such a vague, speculative promise is not enforceable.  *See Hoyt v. Target Stores*, 981 P.2d 188, 194 (Colo. Ct. App. 1994) (holding that "mere vague assurances are unenforceable" (citation omitted)).  Because the available "options" were determined by and known only to Defendant Countrywide, and because there is no evidence of those "options" aside from the plain terms of the agreement, the promise to discuss "options" is either too vague to be enforced or is illusory, in that the sole option available to Plaintiff under the terms of the agreement was foreclosure, which is precisely what occurred. *See* Restatement (Second)

21

of Contracts § 31(1) & (2) (2008) (to enforce the terms of a contract, a promise must be "reasonably certain" and sufficiently specific "to provide a basis for determining the existence of a breach and for giving an appropriate remedy"); *Id.* § 2 cmt. e ("Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise. . . .  Even if a present intention is manifested, . . . there can be no promisee who is justified in an expectation of performance.").

I find that it is not in dispute that Plaintiff defaulted on the loan.  I also find that it is not in dispute that a specific provision of the new payment schedule authorized Defendant Countrywide to foreclose upon Plaintiff's property as a result of his default, regardless of whether he was given prior notice or a chance to cure.  Further, I find that the new payment schedule cannot be reasonably interpreted to excuse Plaintiff's default if Defendant Countrywide failed to discuss so-called "options" with him.  Finally, even assuming the new payment schedule imposed an affirmative responsibility on Defendant Countrywide to discuss options prior to foreclosure, I find that the undisputed act of Defendant sending the June 24, 2006 letter to Plaintiff evidences its compliance with this general provision.  In the alternative, Defendant's alleged failure to comply with this provision does not give rise to an enforceable legal claim.  *See, e.g.*, *Soderlun v. Pub. Serv. Co.*, 944 P.2d 616, 620-21 (Colo. Ct. App. 1997) (holding that for provisions to be enforced, they must be sufficiently definite and specific so that the court can understand the promisor's obligation "and enforce the promise according to its terms"); 3 Richard A. Lord, *Williston on Contracts* § 7.7 (4th ed. 2009) (noting that "[w]here an illusory promise is made, that is, a promise merely in form, but in actuality not promising anything, . . . [e]ven if it were recognized by law, it would

22

impose no obligation, since the promisor always has it within his power to keep his promise yet escape performance of anything detrimental to himself or beneficial to the promisee. In such cases, where the promisor may perform or not, solely on the condition of his whim," the promise does not create a legal right).   Therefore, I find no evidentiary support for Plaintiff's claim that Defendant Countrywide breached its contract with Plaintiff.

"Summary judgment is appropriate if the evidence is such that no reasonable jury could return a verdict for the nonmoving party." *Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 920 (10th Cir. 2008) (citation omitted).   Because I find that Defendant Countrywide acted pursuant to the clear terms of the new payment schedule, I find that there is no genuine issue of material fact that remains to be resolved pursuant to this claim.   Accordingly, I RECOMMEND that Defendant's Second Motion be **GRANTED** with respect to Claim IX.

### IV.  Plaintiff's Motion

Because I recommend granting Defendant's Second Motion in its entirety, I necessarily recommend denying Plaintiff's Motion on its merits.   Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Because Plaintiff bears the ultimate burden of persuasion at trial, his burden pursuant the Motion is heightened, and he must show the absence of a genuine issue of material fact by demonstrating each "element of [his] claim or defense by sufficient, competent evidence to set forth a *prima facie* case." *In re Ribozyme*, 209 F. Supp. 2d at 1111.  As noted above,

Plaintiff has provided no evidence to either state a claim upon which relief can be granted or to raise a material dispute about the claims contained in his operative complaint. Plaintiff's lack of evidence necessarily leads to the conclusion that he has failed to demonstrate that there is no genuine issue as to any material fact such that he is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Further, as noted above, given that Defendant Countrywide is entitled to summary judgment, Plaintiff has necessarily failed to meet his burden to obtain judgment on the pleadings.  Accordingly, I RECOMMEND that Plaintiff's Motion be **DENIED**.

## V.  Conclusion

As set forth above, the Court **RECOMMENDS** that Defendant's Second Motion [#52] be **GRANTED**, and that Plaintiff's case be dismissed as to Defendant Countrywide.

IT IS FURTHER **RECOMMENDED** that Defendant's First Motion [#19] be **DENIED as moot**.

IT IS FURTHER **RECOMMENDED** that Plaintiff's Motion [#84] be **DENIED**.

IT IS FURTHER **RECOMMENDED** that Plaintiff's **Motion for Leave to Propound Discovery** [Docket No. 99; Filed May 4, 2009] ("Motion for Discovery") and **Motion for Leave to File Out of Time His Second Amended Verified Complaint and Joinder** [Docket No. 100; Filed May 4, 2009] ("Motion to Amend") be **DENIED as moot**.  Even were the Motions not moot, I would recommend denial of the Motion for Discovery pursuant to a balance of factors set forth in *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987), i.e., a trial date has been set; the request is opposed; Defendant Countrywide will be prejudiced; Plaintiff failed to show he was diligent in his efforts to obtain the information

within the applicable case discovery deadlines; it was foreseeable that additional discovery would be necessary prior to expiration of the deadline; and, given my Recommendation, it is sufficiently unclear that the proposed discovery is likely to lead to the discovery of relevant evidence.  I would also recommend denial of the Motion to Amend because no amended pleading is attached and Plaintiff failed to provide good cause for his failure to timely seek amendment pursuant to Fed. R. Civ. P. 16(b).  Further, I find that justice would not be served by amendment pursuant to Fed. R. Civ. P. 15(a) because Plaintiff unduly delayed in seeking amendment, Plaintiff did not cure any pleading deficiencies when he was given leave to amend on a prior occasion, the current and new parties would be prejudiced, and, on the basis of the information provided and this Recommendation, the purported amended claims appear to be futile.  *See Foman v. v. Davis*, 371 U.S. 178, 182 (1962).

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of the Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  May 19, 2009

                                          BY THE COURT:
                                           s/ Kristen L. Mix
                                          U.S. Magistrate Judge
                                          Kristen L. Mix